IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35172-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRENDAN REIDY TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — In *State v. Taylor*, 193 Wn.2d 691, 444 P.3d 1194

(2019), our Supreme Court reviewed and reversed one of two issues decided in our prior

decision. It then remanded the appeal to us to resolve Taylor's unresolved arguments—

two claims of ineffective assistance of counsel, cumulative error, and entry of an unlawful

sentence. We reject Taylor's ineffective assistance claims and accept the State's

concession that the trial court exceeded its authority by sentencing Taylor beyond the

statutory maximum.

FACTS

Brendan Taylor and Anna[1] began living together in January 2016. A no-contact

order prohibited Taylor from being within 1,000 feet of Anna. Nevertheless, they

continued to live together.

---

[1] We refer to Anna by only her first name to avoid subjecting her to unwanted
publicity. We intend no disrespect.

On Christmas Day 2016, their landlord drove past their residence and saw Anna

using a snow shovel like a hatchet against the windshield of Taylor's car. The landlord

called 911. Anna also called 911.

Taylor, who was under supervision by the Department of Corrections, left by the

time law enforcement arrived. Anna told the deputy that Taylor hit her multiple times in

the head. An ambulance arrived and took Anna to the hospital. The deputy went to the

hospital later that day to ask Anna questions. He later testified that Anna's injuries, facial

bruising and bumps, were consistent with her being hit multiple times in the head.

The State charged Taylor with several crimes, including felony violation of a no-

contact order,[2] assault in the second degree (strangulation or suffocation), and escape

from community custody.

## PROCEDURE

The day prior to trial, Taylor pleaded guilty to some of the charges, including

escape from community custody. At the change of plea hearing, Taylor provided a

factual basis for his plea. The statement reads in part:

---

[2] An assault in violation of a no-contact order is a felony. RCW 26.50.110(4).

On or about December 27, 2017 [sic[3]], I did willfully discontinue making myself available to the Department of Corrections for supervision, by making my whereabouts unknown or by failing to maintain contact with the Department as directed by the Community Corrections Office.

Clerk's Papers (CP) at 19.  Taylor attested to the statement's accuracy by signing it.

When questioned by the trial court about the statement's truthfulness, Taylor responded:

I was out of gas in Oregon.  But it's—Yeah, it's basically true. . . .  I was making my way to get back up here . . . .
        . . . .
        . . . I was on the phone with [my community corrections officer] and then he had left a message that I wasn't going to be able to make an appointment, but it's still—it's still the same as—as missing out on—on that.

Report of Proceedings (RP) at 7-8.  Taylor went to trial on the felony violation of a no-contact order and assault in the second degree.

On the morning of trial, Taylor asked the court to exclude the no-contact order in light of his stipulation that he knew of its existence and it prohibited him from having contact with Anna.  The State responded that it planned to admit two no-contact orders. The trial court refused to accept Taylor's stipulation.  At trial, the court admitted the no-contact order over Taylor's ER 403 objection.

Also before trial began, the court addressed the parties' motions in limine, including Taylor's request under ER 401, ER 402, and ER 406 to prohibit the State from

---

[3] The statement erroneously states the year as 2017 instead of 2016.

eliciting testimony about his methamphetamine use. The State asserted that Anna would testify that Taylor used methamphetamine before the assault and would testify Taylor becomes aggressive when he uses methamphetamine. The State argued that Anna had personal knowledge and it went to Taylor's motive, intent, and state of mind at the time of the assault. The trial court agreed with the State and denied Taylor's motion, reasoning: "[T]he [S]tate's not trying to offer it to show the character, but merely the motive." RP at 18-19.

The trial court also excluded Anna's 911 call because the State failed to disclose it to Taylor until just before trial.

Anna testified at trial. During cross-examination, defense counsel asked Anna a series of questions to test her memory of the event. When asked about her memory, Anna described it as "Not the best." RP at 109. When asked whether she remembered talking to the deputy the day of the event, she said she did not remember talking to the deputy, either in the morning or later that day at the hospital. When asked whether she called 911, she said she did not recall calling 911.

After these questions, the State asked the trial court to admit the 911 call. It argued that Taylor's questions opened the door. The trial court agreed, and the State played Anna's 911 call for the jury.

The State called a deputy to admit pictures of Anna taken the day of the event. The pictures did not show bruising or any serious injuries. The deputy testified that bruising takes a bit longer to appear and, by the afternoon, Anna had some bruising.

During closing arguments, Taylor emphasized Anna's inability to remember and various inconsistent statements. He argued these problems made her testimony unreliable.

The jury found Taylor not guilty of assault in the second degree, but did find him guilty of felony violation of a no-contact order. We infer the jury found that an assault occurred, but that the State failed to prove the type of harm—strangulation or suffocation—to raise the assault to second degree. The trial court convicted Taylor and sentenced him to five years of imprisonment and one year of community custody.

Taylor appealed to this court. Taylor argued (1) the trial court abused its discretion by refusing to accept his stipulation and admitting the no-contact order over his objection, (2) he received ineffective assistance of counsel in two instances, (3) cumulative error warrants reversal, (4) the factual basis of his guilty plea to escape from community custody was insufficient, and (5) the sentencing court exceeded its authority by sentencing him beyond the statutory maximum.

In our previous decision, we addressed the first and the fourth issues. We held that

*Old Chief v. United States*, 519 U.S. 172, 191-92, 117 S. Ct. 644, 136 L. Ed. 2d 574

(1997), which requires a trial court to accept an accused's offer to stipulate to a prior

conviction when the existence of a prior conviction is an element of the offense, extends

to an accused's offer to stipulate to a postconviction no-contact order. *State v. Taylor*, 4

Wn. App. 2d 381, 383, 421 P.3d 983 (2018), *rev'd by*, 193 Wn.2d 691, 444 P.3d 1194

(2019). We also held that the trial court erred by not inquiring about Taylor's inconsistent

statements prior to accepting his guilty plea to escape from community custody. *Id.* at

391. Because we reversed Taylor's conviction for felony violation of a no-contact order,

we did not address Taylor's other assignments of error. *Id.* at 389 n.4.

The State sought review of our decision. The Supreme Court granted review to

address whether *Old Chief* applies to domestic violence no-contact orders. The court

reversed our decision and held that *Old Chief* does not apply to domestic violence no-

contact orders, and the trial court did not abuse its discretion by declining Taylor's offer

to stipulate to the facts contained in the no-contact order. *Taylor*, 193 Wn.2d at 703. The

court remanded the appeal to this court for further proceedings. *Id.* We now address

Taylor's remaining assignments of error.

ANALYSIS

A.     INEFFECTIVE ASSISTANCE OF COUNSEL

Taylor contends there were two instances in which he received ineffective

assistance of counsel.  First, his attorney waived the proper evidentiary objection by

objecting to his prior drug use on grounds other than ER 404.  Second, his attorney

opened the door to the highly prejudicial and previously excluded 911 call.

To protect a defendant's right to counsel, a defendant has the right to receive

effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984).  An allegation of ineffective assistance of counsel is a

mixed question of law and fact that we review de novo.  *Id.* at 698.  To determine whether

counsel provided effective assistance, we apply a two-pronged test: (1) whether counsel's

performance was deficient, and (2) whether that deficient performance prejudiced the

defendant to an extent that changed the result of the trial.  *Id.* at 687.  We can address the

second prong initially "[i]f it is easier to dispose of an ineffectiveness claim on the ground

of lack of sufficient prejudice."  *Id.* at 697.

> 1.     *ER 404(b) objection was preserved, and admission of improper
>        evidence was harmless error*

Taylor argues his attorney provided ineffective assistance of counsel by objecting

to evidence of drug use on improper grounds, rather than ER 404(b) and ER 403.  In the

alternative, Taylor argues that—if the ER 404(b) issue is preserved—the trial court erred in its ruling.

Although the motion in limine did not raise ER 404(b), the trial court's ruling shows it addressed the evidence in light of ER 404(b):

> And the [S]tate's not trying to offer [the drug use] to show the character, but merely the motive.

RP at 18-19. Because the ER 404(b) issue was addressed by the trial court, and therefore preserved for review, Taylor is not prejudiced by his counsel's failure to raise an ER 404(b) objection.

This court reviews a trial court's admission of ER 404(b) evidence for an abuse of discretion. *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984 (2001). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

ER 404(b) prohibits the use of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. *State v. Slocum*, 183 Wn. App. 438, 448, 333 P.3d 541 (2014). The evidence may be admitted for certain purposes such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity or absence of mistake or accident. ER 404(b). The State must meet a

"substantial burden" when attempting to bring in evidence of prior bad acts under one of

these exceptions. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Before admitting misconduct evidence, the court must find by a preponderance of

the evidence that the misconduct actually occurred, identify a proper purpose for the

evidence, determine its relevance to prove an element of the offense, and weigh the

probative value against the prejudicial effect. *Slocum*, 183 Wn. App. at 448.

Here, the trial court engaged in no analysis other than to affirmatively state "the

[S]tate's not trying to offer [the evidence] to show the character, but merely the motive."

RP at 18-19. Anna's testimony of Taylor's history of drug use had no bearing as to

whether Taylor violated the no-contact order. The court held that it was to show motive.

We disagree. The only purpose his history of past illicit drug use could have had was that

he was mean when he used drugs in the past; hence, he was more likely to commit the

present assault because he was under the influence of drugs. This is propensity evidence,

which is prohibited by ER 404(b). However, not all evidentiary error is reversible.

"Erroneous admission of evidence in violation of ER 404(b) is analyzed under the

nonconstitutional harmless error standard—that is, we ask whether there is a reasonable

probability that, without the error, 'the outcome of the trial would have been materially

9

affected.'" *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014) (internal

quotation marks omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207

(2012)).

The admitted testimony was harmless because the outcome of the trial would not

have been different.  The jury found Taylor not guilty of assault in the second degree.

The evidence presented at trial supported Taylor's sole conviction for violation of a no-

contact order.  The State admitted the two no-contact orders, which were in effect on

December 25, 2016.  Taylor knew of these orders.  Anna testified to her interaction with

Taylor on Christmas Day and how he put his arm across her throat and hit her multiple

times.  The deputy testified that her bruising, which was manifested later that day at the

hospital, was consistent with being assaulted.  And because the felony violation of a no-

contact order required the jury to find that Taylor's conduct amounted to an assault—and

the jury found him not guilty of assault in the second degree—the jury was not materially

affected by the testimony of Taylor's drug use by Anna.

> 2.      *Asking victim if she called 911 was not deficient performance*

Taylor argues he received ineffective assistance of counsel because his attorney

opened the door to the 911 call.  We disagree.

10

To establish ineffective assistance of counsel, the defendant must show deficient performance and that the deficient performance prejudiced the defendant. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). To prove deficient performance, the defendant must show that the representation fell below an objective standard of reasonableness and there is a reasonable probability that, absent the error, the result would have been different. *Id.* at 842. In analyzing such a claim, the appellate court starts with a presumption that counsel's representation was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Competency of counsel is determined based on the entire record below. *Id.*

When counsel's conduct exhibits legitimate trial strategy or tactics, the performance is not deficient. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A defendant can rebut the presumption of reasonable performance by showing that there was no "'conceivable legitimate tactic'" explaining his counsel's conduct. *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). The key question is not whether the attorney's choices were strategic, but whether they were reasonable. *Id.* at 34.

Defense counsel's central defense was that Anna was not believable. Defense counsel sought to show this, in part, by establishing that Anna had a poor recollection of

11

the day's events. He succeeded in doing so. This success may have been part of the

reason the jury did not convict Taylor on the serious charge of assault in the second

degree.

Unfortunately, the trial court determined that defense counsel opened the door to

the 911 call when he asked the victim *if* she called 911. Anna testified she did not recall.

This answer may have left the jury with the false impression that Anna did not call 911.

Such an impression would have added weight to Taylor's argument that he did not injure

Anna or that her injuries were not serious.

Defense counsel took a calculated risk the trial court would not admit the 911

recording and the jury would be left with a false impression that Anna did not call 911.

Because this strategy was reasonable, defense counsel was not deficient. We conclude

that Taylor did not receive ineffective assistance of counsel.

B.     CUMULATIVE ERROR

Taylor contends the cumulative errors warrant reversal. We disagree.

"The cumulative error doctrine applies when several trial errors occurred and none

alone warrants reversal but the combined errors effectively denied the defendant a fair

trial." *State v. Jackson*, 150 Wn. App. 877, 889, 209 P.3d 553 (2009). The only trial

12

court error was admitting propensity evidence, which we concluded was harmless. There is no cumulative error.

C.    SENTENCE EXCEEDING STATUTORY MAXIMUM

Taylor argues the sentencing court exceeded its authority by sentencing him to a combined period of incarceration and community custody longer than the 60-month statutory maximum for class C felonies. A felony violation of a no-contact order is a class C felony. RCW 26.50.110(4). It carries a maximum sentence of five years. RCW 9A.20.021(1)(c). The five-year maximum includes the total combined period of incarceration and community custody. RCW 9.94A.701(9); *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). The court sentenced Taylor to 60 months in prison and 12 months of community custody.

The State concedes the trial court exceeded its authority by imposing a prison term and community custody totaling 72 months. We agree, accept the State's concession, and remand for resentencing.[4]

D.    APPELLATE COSTS

---

[4] Because resentencing is required, we do not address Taylor's argument that the State failed to prove prior convictions.

Taylor asks the panel to exercise its discretion to waive costs on appeal. In accordance with RAP 14.2, we defer the decision of appellate costs to our court commissioner.

Affirmed, but remanded for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Fearing, J.

14